# HARRAH INDEPENDENT SCHOOL DISTRICT
ET AL. *v.* MARTIN

No. 78–443.   Decided February 26, 1979

Per Curiam.

Respondent Martin was employed as a teacher by petitioner School District under a contract that incorporated by reference the School Board's rules and regulations. Because respondent was tenured, Oklahoma law required the School Board to renew her contract annually unless she was guilty of, among other things, "wilful neglect of duty." Okla. Stat., Tit. 70, § 6–122 (Supp. 1976) (repealed 1977). The same Oklahoma statute provided for hearing and appeal procedures in the event of nonrenewal. One of the regulations incorporated into respondent's contract required teachers holding only a bachelor's degree to earn five semester hours of college credit every three years. Under the terms of the regulation, non-compliance with the continuing-education requirement was sanctioned by withholding salary increases.

Respondent, hired in 1969, persistently refused to comply with the continuing-education requirement and consequently forfeited the increases in salary to which she would have otherwise been entitled during the 1972–1974 school years. After her contract had been renewed for the 1973–1974 school term, however, the Oklahoma Legislature enacted a

law mandating certain salary raises for teachers regardless of their compliance with the continuing-education policy. The School Board, thus deprived of the sanction which it had previously employed to enforce the provision, notified respondent that her contract would not be renewed for the 1974–1975 school year unless she completed five semester hours by April 10, 1974. Respondent nonetheless declined even to enroll in the necessary courses and, appearing before the Board in January 1974, indicated that she had no intention of complying with the requirement in her contract. Finding her persistent noncompliance with the continuing-education requirement "wilful neglect of duty," the Board voted at its April 1974 meeting not to renew her contract for the following school year. After unsuccessfully pursuing administrative and judicial relief in the Oklahoma state courts, respondent brought this action in the United States District Court for the Western District of Oklahoma. She claimed that the Board's action had denied her liberty and property without due process of law and equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution.

The District Court dismissed her complaint; it refused to assert "pendent jurisdiction" over respondent's state-law claim that her refusal to comply with the continuing-education provision in her contract did not constitute "wilful neglect of duty" within the meaning of the Oklahoma tenure statute, and it concluded upon the stipulated evidence that the Board had not violated the Fourteenth Amendment in refusing to renew her contract. The Court of Appeals for the Tenth Circuit reversed. 579 F. 2d 1192 (1978). Following its own precedent of *Weathers* v. *West Yuma County School Dist. R–J–1,* 530 F. 2d 1335 (1976), the Court of Appeals determined that respondent had no protected "liberty" interest under the Fourteenth Amendment, but nonetheless held that under an amalgam of the equal protection and due process

guarantees of the Fourteenth Amendment she had a constitutional right to retain her employment as a teacher. The Board's "arbitrary and capricious" action, concluded the Court of Appeals, "violated Fourteenth Amendment notions of fairness embodied in the Due Process Clause generally and the Equal Protection Clause particularly." 579 F. 2d 1192, 1200 (1978).

While our decisions construing the Equal Protection and Due Process Clauses of the Fourteenth Amendment do not form a checkerboard of bright lines between black squares and red squares, neither do they leave courts, and parties litigating federal constitutional claims in them, quite as much at sea as the Court of Appeals apparently thought was the case. It is true, as that court observed, that the Due Process Clause of the Fourteenth Amendment not only accords procedural safeguards to protected interests, but likewise protects substantive aspects of liberty against impermissible governmental restrictions. *Kelley* v. *Johnson,* 425 U. S. 238, 244 (1976). But our cases supply an analytical framework for determining whether the Fourteenth Amendment rights of a person in the position of respondent have been violated. Employing that framework here, we conclude that the Court of Appeals' judgment should be reversed.

The School District has conceded at all times that respondent was a "tenured" teacher under Oklahoma law, and therefore could be dismissed only for specified reasons. She was accorded the usual elements of procedural due process. Shortly after the Board's April 1974 meeting, she was advised of the decision not to renew her contract and of her right to a hearing before the Board. At respondent's request, a hearing was held at which both she and her attorney appeared and unsuccessfully contested the Board's determination that her refusal to enroll in the continuing-education courses constituted "wilful neglect of duty." Thus, as the Court of Appeals recognized, respondent has no colorable claim of a

denial of procedural due process.  See *Arnett* v. *Kennedy,* 416
U. S. 134 (1974); *Perry* v. *Sindermann,* 408 U. S. 593, 599–
603 (1972).  If respondent is to succeed in her claims under
the Fourteenth Amendment, it must be on the basis of either
"substantive" due process or equal protection.

Relying on the Fourteenth Amendment's protection of the
"substantive aspects" of "life, liberty, and property," the
Court of Appeals held, apparently, that the School Board's
decision to substitute the sanction of contract nonrenewal for
the sanction of withholding routine pay increases was so
"arbitrary" that it offended "notions of fairness" generally
embodied in the Due Process Clause.  Here, however, there
is no claim that the interest entitled to protection as a matter
of substantive due process was anything resembling "the
individual's freedom of choice with respect to certain basic
matters of procreation, marriage, and family life."  *Kelley* v.
*Johnson, supra,* at 244; see *Roe* v. *Wade,* 410 U. S. 113
(1973); *Eisenstadt* v. *Baird,* 405 U. S. 438 (1972); *Stanley*
v. *Illinois,* 405 U. S. 645 (1972); *Griswold* v. *Connecticut,*
381 U. S. 479 (1965); *Meyer* v. *Nebraska,* 262 U. S. 390
(1923).  Rather, respondent's claim is simply that she, as
a tenured teacher, cannot be discharged under the School
Board's purely prospective rule establishing contract nonre-
newal as the sanction for violations of the continuing-educa-
tion requirement incorporated into her contract.

The School Board's rule is endowed with a presumption of
legislative validity, and the burden is on respondent to show
that there is no rational connection between the Board's
action and its conceded interest in providing its students with
competent, well-trained teachers.  See *Kelley* v. *Johnson,*
*supra,* at 247; *Day-Brite Lighting, Inc.* v. *Missouri,* 342 U. S.
421, 423 (1952); *Prince* v. *Massachusetts,* 321 U. S. 158, 168–
170 (1944); *CSC* v. *Letter Carriers,* 413 U. S. 548 (1973).
Respondent's claim that the Board acted arbitrarily in im-
posing a new penalty for noncompliance with the continuing-

education requirement simply does not square with the facts. By making pay raises mandatory, the state legislature deprived the Board of the sanction that it had earlier used to enforce its teachers' contractual obligation to earn continuing-education credits. The Board thus turned to contract nonrenewal, but applied this sanction purely prospectively so that those who might have relied on its past practice would nonetheless have an opportunity to bring themselves into compliance with the terms of their contracts. Indeed, of the four teachers in violation of the continuing-education requirement when the state legislature mandated salary increases, only respondent persisted in refusing to enroll in the necessary courses. Such a course of conduct on the part of a school board responsible for the public education of students within its jurisdiction, and employing teachers to perform the principal portion of that task, can scarcely be described as arbitrary. Respondent's claim of a denial of substantive due process under these circumstances is wholly untenable.

The Court of Appeals' reliance upon the equal protection guarantee of the Fourteenth Amendment was likewise mistaken. Since respondent neither asserted nor established the existence of any suspect classification or the deprivation of any fundamental constitutional right, see *San Antonio Independent School Dist.* v. *Rodriguez,* 411 U. S. 1, 40 (1973), the only inquiry is whether the State's classification is "rationally related to the State's objective." *Massachusetts Board of Retirement* v. *Murgia,* 427 U. S. 307, 315 (1976). The most cursory examination of the agreed facts demonstrates that the Board's action met this test.

The School District's concern with the educational qualifications of its teachers cannot under any reasoned analysis be described as impermissible, and respondent does not contend that the Board's continuing-education requirement bears no rational relationship to that legitimate governmental concern.

Rather, respondent contests "the permissibility of the classification by which [she] and three other teachers were required to achieve [by April 1974] the number of continuing-education credits that all other teachers were given three years to achieve." Brief in Opposition 7.

The Board's objective in sanctioning violations of the continuing-education requirement was, obviously, to encourage future compliance with the requirement. Admittedly, imposition of a penalty for noncompliance placed respondent and three other teachers in a "class" different from those teachers who had complied with their contractual obligations in the past. But any sanction designed to enforce compliance with a valid rule, whatever its source, falls only on those who break the rule. Respondent and those in her "class" were the only teachers immediately affected by the Board's action because they were the only teachers who had previously broken their contractual obligation. There is no suggestion here that the Board enforces the continuing-education requirement selectively; the Board refuses to renew the contracts of those teachers and only those teachers who refuse to comply with the continuing-education requirement.

That the Board was forced by the state legislature in 1974 to penalize noncompliance differently than it had in the past in no way alters the equal protection analysis of respondent's claim. Like all teachers employed in the School District, respondent was given three years to earn five continuing-education credits. Unlike most of her colleagues, however, respondent refused to comply with the requirement, thus forfeiting her right to routine pay raises. Had the legislature not mandated salary increases in 1974, the Board presumably would have penalized respondent's continued refusal to comply with the terms of her contract by denying her an increase in salary for yet another year. The Board, having been deprived by the legislature of the sanction previously employed to enforce the continuing-education requirement, merely sub-

stituted in its place another, albeit more onerous, sanction. The classification created by both sanctions, however, was between those who had acquired five continuing-education credits within the allotted time and those who had not.

At bottom, respondent's position is that she is willing to forgo routine pay raises, but she is not willing to comply with the continuing-education requirement or to give up her job. The constitutional permissibility of a sanction imposed to enforce a valid governmental rule, however, is not tested by the willingness of those governed by the rule to accept the consequences of noncompliance. The sanction of contract nonrenewal is quite rationally related to the Board's objective of enforcing the continuing-education obligation of its teachers. Respondent was not, therefore, deprived of equal protection of the laws.

The petition for certiorari is granted, and the judgment of the Court of Appeals is *Reversed.*

MR. JUSTICE MARSHALL concurs in the result.