ELIZABETH ALDRIDGE *et al.*, Plaintiffs-Appellants, *v.* WILLIAM BOYS, Director of the Department of Personnel of the State of Illinois, *et al.*, Defendants-Appellees.

Fourth District    No. 16915

Opinion filed July 28, 1981.

Leahy and Leahy, of Springfield (Mary Lee Leahy, Andrew J. Leahy, and Cheryl S. Redfield, of counsel), for appellants.

Tyrone C. Fahner, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal presents some cryptic and complex questions regarding the relationship of certain constitutional guaranties to collective bargaining in the public sector.

Plaintiffs, 40 in number, filed a suit for declaratory judgment in the circuit court of Sangamon County pursuant to section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57.1) against the Directors of, and the Departments of, Personnel and Rehabilitation Services of the State of Illinois. They alleged that they were all teachers at the Illinois School for the Visually Impaired (ISVI) located at Jacksonville and that their personnel classification was that of educator. It was further alleged that teachers at the Illinois School for the Deaf (ISD), also located at Jacksonville, likewise were classified as educators and that plaintiffs at ISVI and the teachers at ISD possessed substantially the same qualifica-

tions and performed substantially the same work. Further allegations were that prior to 1977 teachers at ISVI and ISD were treated alike in terms of salary, employment benefits and working conditions, but that since 1977 such treatment has differed and that plaintiffs are paid substantially less than the teachers at ISD.

Plaintiffs then alleged that such difference violated the due process and equal protection rights guaranteed to them by the fourteenth amendment to the United States Constitution and by article I, section 2, of the 1970 Illinois Constitution.

Their prayer for relief was that the trial court enter judgment declaring that they were entitled to equal treatment with other similarly situated employees of the State of Illinois.

Defendants filed as their responsive pleading a motion to dismiss under sections 45 and 48(1)(i) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, pars. 45 and 48(1)(i)). The heart of the motion was contained in two affidavits attached. One was made by the Chief Labor Negotiator of the Illinois Department of Personnel and the other by the Labor Relations Administrator of the Illinois Department of Rehabilitation Services. In summary, these affidavits established that plaintiffs were members of a collective bargaining unit designated as RC-27, represented by the American Federation of State, County and Municipal Employees as their exclusive bargaining agent; that an agreement concerning wages, hours, and other terms and conditions of employment for unit RC-27 had been negotiated with the Federation by the Department of Personnel and that the agreement had been ratified by the members of unit RC-27. The agreement became effective July 1, 1977, and provided for a salary increase of $65 per month across the board for all members of unit RC-27.

In response, an affidavit of one of the plaintiffs was filed in which the existence of unit RC-27 was admitted together with the membership of plaintiffs in the unit. Also admitted was the existence of the collective bargaining agreement. It was further averred that unit RC-27 comprises about 2,000 professional employees of the State of Illinois, that none of the other 1,950 members perform duties similar to those of the teachers at ISVI and ISD, and that the teachers at ISD are not members of unit RC-27.

After extensive briefing being submitted, the trial court allowed the motions to dismiss with prejudice and this appeal followed. While the parties raise and discuss in their briefs several affirmative matters such as estoppel, laches, exhaustion of administrative remedies, our consideration of the matter will be limited to the complaint and the motions filed by the defendants together with the supporting affidavits and the counteraffidavit of one of the plaintiffs.

■■ We also note at the outset that while the complaint alleged due process violations, this matter is only peripherally touched upon in plaintiffs' brief. The principal basis of their argument in both the brief and at orals was on equal protection. Therefore, we consider the due process argument waived under Supreme Court Rule 341(e)(7) (73 Ill. 2d R. 341(e)(7)).

A brief sketch of the background against which this controversy stands may be helpful in understanding the issue. Although importuned on many occasions to enact legislation authorizing collective bargaining for State employees, the Illinois General Assembly did not take such action. On September 4, 1973, then-Governor Walker promulgated Executive Order No. 6, which established the Office of Collective Bargaining and authorized public employee collective bargaining. He found as his authority for the order section 9(7) of the Personnel Code (Ill. Rev. Stat. 1969, ch. 127, par. 63b109(7)) which provides that one of the duties of the Director of Personnel is "[t]o conduct negotiations affecting pay, hours of work, or other working conditions of employees subject to this Act."

The Director of Personnel thereafter issued extensive rules governing that establishment of bargaining units and other matters relating to collective bargaining. Briefly, a unit is established as follows: 30 percent, or more, of the employees may petition for certification; the Office of Collective Bargaining (OCB) then determines whether the proposed unit is appropriate under standards set forth in Executive Order No. 6; if OCB determines that the proposed unit is appropriate, an election by secret ballot is then held under its supervision; an employee organization or union may then be certified as the exclusive bargaining representative if it receives a majority of votes in the election. A collective bargaining contract is then negotiated and submitted to the membership of the unit. A majority vote of the unit will ratify the contract.

In the rather sparse record before us, plaintiffs nowhere deny that unit RC-27 was properly formed nor that the collective bargaining agreement was in any way defective. The record is silent as to whether plaintiffs voted in favor of the unit or in favor of the agreement.

■■ Neither party has raised any challenge to Executive Order No. 6, and, for the purposes of this opinion, we shall assume its constitutional validity and that collective bargaining in the public sector has a legal basis in this State. The question then presented by plaintiffs' complaint is whether the fruits of that bargaining contain constitutional imperfections. It is a reversal of the familiar fruit-of-the-poisonous-tree doctrine found in the area of the criminal law. If the tree be wholesome, can the fruit be poisonous?

There is an extreme poverty of authority in this area. Equal protection cases abound in situations where the State is acting unilaterally by

imposing laws upon its citizens. A few examples will suffice to demonstrate the thesis: discrimination in the law against unwed fathers (*Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208); discrimination against illegitimates in matter of inheritance (*Trimble v. Gordon* (1977), 430 U.S. 762, 52 L. Ed. 2d 31, 97 S. Ct. 1459); discrimination against females in preference for appointment as administrators of decedent's estates (*Reed v. Reed* (1971), 404 U.S. 71, 30 L. Ed. 2d 225, 92 S. Ct. 251).

There is also a variety of cases in the area of public employment where the State seeks to terminate such employment. These proceed on a due process basis. (*Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701; *Perry v. Sindermann* (1972), 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694; *Arnett v. Kennedy* (1974), 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633.) All of these concern a single employee.

In the instant case we are not dealing with a situation where the State is imposing its will *ex parte* on the citizenry in general or on one citizen in particular. Rather, we have a negotiated agreement between the State and a discrete group. Therefore, except for the general principles enunciated in them, these authorities are of little assistance in answering the question whether the constitutional guaranty of equal protection pervades the collective bargaining agreement to the extent of subsuming it to the benefit of those who are the primary parties in interest to it.

■■ The first consideration when viewing a constitutional issue of equal protection is to determine whether there has been State action. It is fundamental that the constitutional restraints apply only to governments and not to individuals. In the private sector a collective bargaining contract is constrained only by the principle of majority rule and such legislative parameters as may be erected. This is the obvious consequence of the fact that such a contract is the result of bargaining between private parties, but the rule appears to be otherwise when a governmental agency is one of the contracting parties. In *Abood v. Detroit Board of Education* (1977), 431 U.S. 209, 52 L. Ed. 2d 261, 97 S. Ct. 1782, the Supreme Court was faced with a first amendment problem. The board had negotiated an "agency shop" contract whereby those not members of the union were required to pay a service fee equal in amount to union dues. Certain nonunion employees objected to public sector unions and to various activities financed by the service fee. The precise holding of the court is inapplicable here, but we find significant Mr. Justice Powell's concurrence, to which the majority did not disagree. In speaking of the nature of the collective bargaining agreement, he said:

> "The collective-bargaining agreement to which a public agency is a party is not merely analogous to legislation, it has all the attributes of legislation for the subjects with which it deals. * * *

The State in this case has not merely authorized agency-shop agreements between willing parties; it has negotiated and adopted such an agreement itself. * * * Accordingly, the Board's collective-bargaining agreement, like any other enactment of state law, is fully subject to the constraints that the Constitution imposes on coercive governmental regulation." 431 U.S. 209, 252-53, 52 L. Ed. 2d 261, 295-96, 97 S. Ct. 1782, 1808-09.

■■ We find the negotiation and acceptance of the collective bargaining agreement in the instant case sufficient state action to trigger the constitutional inquiry.

The nature of the equal protection guaranty was stated by Mr. Justice Stewart in *Personnel Administrator v. Feeney* (1979), 442 U.S. 256, 271-72, 60 L. Ed. 2d 870, 883, 99 S. Ct. 2282, 2292, as follows:

"The equal protection guarantee of the Fourteenth Amendment does not take from the States all power of classification. [Citation.] Most laws classify, and many affect certain groups unevenly, even though the law itself treats them no differently from all other members of the class described by the law. When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern. [Citations.] The calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility. [Citations.] In assessing an equal protection challenge, a court is called upon only to measure the basic validity of the legislative classification. [Citations.] When some other independent right is not at stake, see, *e.g., Shapiro v. Thompson*, 394 U.S. 618 [, 22 L. Ed. 2d 600, 89 S. Ct. 1322], and when there is no 'reason to infer antipathy,' *Vance v. Bradley*, 440 U.S. 93, 97 [, 59 L. Ed. 2d 171, 176, 99 S. Ct. 939, 942-43], it is presumed that 'even improvident decision will eventually be rectified by the democratic process . . . .' *Ibid.*"

■■ There exist, and plaintiffs admit such existence, at least two analyses in applying equal protection. One is sometimes called the "strict scrutiny" analysis when there is involved a suspect classification or a fundamental interest. Plaintiffs claim neither of these. Another, applicable here, is the "rational relationship" analysis. This has been stated in a variety of ways, but at root the inquiry is not whether State action results in unequal treatment but whether such inequality has a reasonable basis in fact or a rational relationship to a State purpose. Compare *McGowan v. Maryland* (1961), 366 U.S. 420, 6 L. Ed. 2d 393, 81 S. Ct. 1101.

■■ Plaintiffs make no attack upon Executive Order No. 6 itself nor upon the certification of unit RC-27. Only by innuendo do they attack the collective bargaining agreement and the State officials who negotiated it,

and that only partially, *viz.*, the pay differential with the teachers at ISD. In the absence of any allegations of fraud, deceit, overreaching, or other improper or illegal conduct, we find the contract itself a rational basis for disparate treatment.

■■ Moreover, we find a legitimate State purpose in Executive Order No. 6, the stabilization of employee relations within the State government. The opening paragraphs of the Order state:

> "The State of Illinois is the largest employer in the State, with 117,000 employees. More than half of these employees work for agencies and departments subject to the Governor. They do not have collective bargaining rights while workers in the private sector do. Thus, State employees have been deprived of important rights accorded other workers in Illinois.
>
> Experience in private industry, the federal government and other states has demonstrated that constructive collective bargaining leads to operational efficiency and employee well-being. Therefore, the public interest in the orderly and efficient operation of State government will be served by establishing the right of employees to organize and bargain collectively.
>
> Although some State employees now belong to employee unions, there is no procedure for determining what union has the right to represent any state employees, and no guidelines with regard to the duties and rights of any such union. Establishing orderly labor relations procedures will encourage career employment and help keep patronage out of State government."

■■ Additionally, the Order applies across the entire spectrum of State employees and states:

> "1. This Order shall extend to all employees of departments, agencies, boards and commissions whose vouchers are subject to approval by the Department of Finance except (for certain categories of employees which do not include plaintiffs).
>
> 2. Employees covered by this Order shall have the right, freely and without fear of threat or reprisal, to voluntarily form, join, and assist an employee organization and the right to refrain from any such activity."

The equal protection argument, in order to be valid, must be applied at this stage of the proceedings, and the question is whether the Order applies equally to all concerned. In *Abood* the plaintiffs were not members of the union but were compelled to pay the equivalent of union dues. They had no participation in the negotiation of the agreement; hence, the "coercive effect" referred to by Mr. Justice Powell.

The application of equal protection may be observed in another setting in the recent case of *Harrah Independent School District v. Martin*

(1979), 440 U.S. 194, 59 L. Ed. 2d 248, 99 S. Ct. 1062. There a teacher refused to comply with the board's continuing education requirement. The penalty was forfeiture of pay raises. The Oklahoma legislature abolished such a penalty and the board thereupon applied a new sanction, that of dismissal. The teacher brought suit alleging denial of equal protection. In ruling against the contention, the Supreme Court said:

"At bottom, respondent's position is that she is willing to forgo routine pay raises, but she is not willing to comply with the continuing-education requirement or to give up her job. The constitutional permissibility of a sanction imposed to enforce a valid governmental rule, however, is not tested by the willingness of those governed by the rule to accept the consequences of noncompliance. The sanction of contract nonrenewal is quite rationally related to the Board's objective of enforcing the continuing-education obligation of its teachers. Respondent was not, therefore, deprived of equal protection of the laws." 440 U.S. 194, 201, 59 L. Ed. 2d 248, 255-56, 99 S. Ct. 1062, 1065.

■■ Similarly, in the instant case equal protection is not measured by the willingness of plaintiffs to accept the benefits of collective bargaining and reject whatever burdens go with it. It is measured by the valid governmental objective set forth in Executive Order No. 6.

Plaintiffs place heavy reliance on *Scime v. County Legislature* (1977), 90 Misc. 2d 764, 395 N.Y.S.2d 952.

We do not quarrel with the principles announced in *Scime*, but we find them inapplicable to the instant case. In *Scime* certain employees of the county were forbidden by law to become members of the union. Salary increases were granted to the union members but denied to the plaintiffs (the non-union group) as a measure of fiscal economy. The New York court held that this was a deprivation of equal protection. The significant difference is that status of the plaintiffs in *Scime* and the "coercive effect" (*Abood*) of the law forbidding union membership. In order for *Scime* to be parallel to the instant case, plaintiffs would be required to make a frontal attack on Executive Order No. 6, and as has already been indicated, no such situation obtains here. On the contrary, so far as the record discloses, plaintiffs here not only want to retain the Order but demonstrate in their affidavit that they will probably seek decertification of their unit pursuant to the Order's mechanisms at some future time.

While it is not specifically articulated in their argument, defendants raise by implication a doctrine which is sometimes called "waiver" in this area of collective bargaining. This doctrine had its origin in New York in *Antinore v. State* (1975), 49 App. Div. 2d 6, 371 N.Y.S.2d 213, *aff'd* (1976), 40 N.Y.2d 921, 389 N.Y.S.2d 576, 358 N.E.2d 268. In substance it holds that

a collective bargaining agreement waives any constitutional rights of the public employee by substituting another procedure for that provided by law. Under New York law a permanent civil servant could be dismissed only after elaborate trial-like procedures. Legislation was enacted to allow such procedures to be replaced by provisions of a collective bargaining agreement. Plaintiff, a civil servant, was served with notice of dismissal and proceedings for arbitration of the matter under the terms of the collective bargaining agreement. He sued, claiming that the arbitration procedure under the contract was a denial of due process. The Appellate Division held that the contract operated as a waiver of the employees constitutional right to due process, saying:

"* * * due process requirements—and we think equal protection as well—are not relevant when they have been waived by the party seeking to assert them, as by voluntarily entering into an agreement for the resolution of disputes in a manner which dispenses with one or more of the rights constitutionally guaranteed." 49 App. Div. 2d 6, 10, 371 N.Y.S.2d 213, 216.

This reasoning was adopted in *DiLorenzo v. Carey* (1978), 62 App. Div. 2d 583, 405 N.Y.S.2d 356, *appeal dismissed* (1978), 45 N.Y.2d 832, 409 N.Y.S.2d 212, 381 N.E.2d 610, *cert. denied sub nom. Farrell v. Carey* (1979), 440 U.S. 914, 59 L. Ed. 2d 463, 99 S. Ct. 1229. There, the tenured faculty of the State university had a collective bargaining contract with permitted termination of employment because of "retrenchment." Plaintiffs sued, alleging deprivation of due process, because they had no opportunity to contest the standards and procedures for determining "retrenchment." The Appellate Division affirmed the trial court's dismissal, holding under *Antinore* that the collective bargaining agreement had waived rights of a constitutional nature.

At least two other courts have dealt with the waiver theory. It was rejected by the Nebraska Supreme Court in *Brady v. Board of Trustees* (1976), 196 Neb. 226, 242 N.W.2d 616, but approved by the Kansas Supreme Court in *Gorham v. City of Kansas City* (1979), 225 Kan. 369, 590 P.2d 1051.

In the instant case, since there is no frontal attack upon either Executive Order No. 6 nor upon the collective bargaining agreement itself, there is no reason to consider the waiver theory, and we therefore offer no opinion as to its validity.

For the foregoing reasons the dismissal order of the circuit court of Sangamon County is affirmed.

Affirmed.

TRAPP, P. J., and GREEN, J., concur.