Agnes SUBLETTE, Plaintiff,

v.

BOARD OF EDUCATION OF FULTON COUNTY, KENTUCKY, et al., Defendants.

Civ. A. No. 85–0084–P(J).

United States District Court, W.D. Kentucky, Paducah Division.

Jan. 16, 1987.

266

Jennifer B. Coffman, Brooks, Coffman & Fitzpatrick, Lexington, Ky., for plaintiff.

Robert L. Chenowith, Bryan, Fogle & Chenowith, Frankfort, Ky., for defendants.

## MEMORANDUM OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHNSTONE, Chief Judge.

This is an action filed pursuant to 42 U.S.C. § 1983 in which plaintiff Sublette seeks restoration of 69 accumulated sick leave days which she claims were reduced by the defendants in violation of her 14th Amendment rights. Plaintiff also seeks recovery for her costs, plus attorney's fees pursuant to 42 U.S.C. § 1988.

By agreement of the parties, this matter was submitted to the court for judgment on the record by order dated September 17, 1986. The parties then filed simultaneous briefs supporting their respective positions for relief. Thus, having considered the pleadings, depositions, documents in evidence, memoranda, and being otherwise sufficiently advised, this court hereby renders the following findings of fact and conclusions of law pursuant to FED.R.CIV.P. 52.

Plaintiff Sublette was initially employed by the defendant Board as a teacher in the 1952–53 school year. At the time of her employment, Kentucky law provided that teachers would receive 10 sick leave days per year, and that a maximum of 20 unused sick leave days could be accumulated and used in subsequent years, unless a greater number of accumulated days was "authorized" by the district board of education. KY.REV.STAT. 161.155(3) (1948).

The superintendent and/or members of his staff were responsible for recording accumulated sick leave days on sick leave cards which were kept in the superintendent's office and were readily available to any teacher who wished to check his or her total accumulated leave.

At the end of the 1969–70 school year, plaintiff Sublette's sick leave card showed that she had accumulated 89 sick leave days. In 1969, the Kentucky legislature amended KY.REV.STAT. 161.155(3) to provide for an increase in the maximum number of accumulated sick leave days allowed, to 60 days, unless otherwise "authorized" by the board of education.

During his employment as superintendent with the defendant board, from 1969 until his resignation in 1983, Harold Garrison recorded sick leave days on teachers' sick leave cards in such a manner as to permit an unlimited accumulation of sick leave days. Board members appear to have been unaware of this, or any other procedures, for keeping such records.

In 1974, the Kentucky legislature again amended KY.REV.STAT. 161.155(3) so as to permit unlimited accumulation of sick leave days. A 1980 amendment further provided that upon retirement, a teacher could receive compensation for accumulated sick leave days, not to exceed 30 percent of the retiring teacher's daily salary. KY.REV. STAT. 161.155(5).

In 1982, retiring teacher Dorothy Terrett requested from the board compensation for her unused accumulated sick leave days, based on the 1980 amendment. On June 3, 1982, the board adopted Minute Orders 204 and 205, in which it approved such a plan of compensation, not to exceed 15 percent of the retiring teacher's salary.

Accordingly, Dorothy Terrett was compensated for 15 percent of 147.5 accumulated sick leave days, 61 of which had been accumulated by the 1969–70 school year. Similarly, another retiring teacher, Mary Catherine Wilmath, received compensation based on an unlimited accumulation of sick leave days.

After Garrison resigned as superintendent in 1983, the acting superintendent, Charles Murphy, discovered that the sick leave cards for all teachers reflected an unlimited accumulation of sick leave during the period of 1948–1974. Thus, when teacher Doris Hepler retired at the end of the 1983–84 school year and requested compensation based on 86.5 accumulated sick leave days, the board authorized payment for only 70.5 days, which reflected a reduction of the 16 excess days she had been allowed to accumulate over and above the pre–1970 statutory maximum of 20.

Leon Mooneyhan was appointed superintendent in July 1984. In September, the board authorized Mooneyhan, by Minute Order No. 46, to correct the errors in the accumulated sick leave records for all personnel and reduce the number of days by the amount which exceeded the statutory maximums of 20 days as of 1970, or 60 days as of 1974.

Plaintiff Sublette was then notified, by letter dated September 12, 1984, that the 189.5 accumulated sick leave days on her card were reduced by 69 days to 120.5 days, since at the end of the 1969–70 school year she was erroneously allowed to accumulate 89 days, rather than the then statutory maximum of 20 days. The accumulated days of twelve other employees, likewise were reduced. As a result, the corrected records also reflected that at least two employees had used in excess of the number of authorized sick leave days.

Plaintiff Sublette claims that this "retroactive" reduction of her unused sick leave days, without notice and an opportunity to be heard, violated her Fourteenth Amendment rights to due process and equal protection, and breached an implied element of her contract with the defendant school system.

## SUBSTANTIVE DUE PROCESS

In order to establish a denial of substantive due process, plaintiff must show that no rational basis existed for the board's actions in reducing the unused accumulated sick leave so as to conform with the law. *Harrah Independent School District v. Martin,* 440 U.S. 194, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1979). In this case, the board admitted no knowledge of the record-keeping methods used with respect to the accumulation of unused sick leave days, and when informed that the method was contrary to statute, took steps to conform the records to the law. Therefore, the conduct of the board was rational in that it desired to conform its records with Kentucky law, and no denial of substantive due process took place.

## EQUAL PROTECTION

Similarly, the board's conduct did not violate plaintiff's equal protection rights. Unless a suspect classification or a

fundamental right is involved, the only inquiry of this court is whether, again, the classification or deprivation is "rationally related to the State's objective." *Harrah,* 99 S.Ct. at 1065. In this case, plaintiff claims defendants violated her rights by treating her differently from other similarly-situated persons, without a rational basis. However, it seems in actuality that plaintiff's complaint is one based on unequal results, rather than legislation which treats similar persons differently. In this case, the uneven effect which resulted when the defendant board conformed its records with the statute did not deprive plaintiff of her equal protection right. *See Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979).

### PROCEDURAL DUE PROCESS

The majority of plaintiff's argument is devoted to a claim that defendants deprived her of a property interest without due process of law, in violation of constitutionally-established procedures. Plaintiff claims that the legislation in effect prior to 1974 permitted local school boards to authorize unlimited accumulation of sick leave days, and that such authorization occurred in this case by the board's occasional practices of approving payment to teachers based on an unlimited accumulation of sick leave days.

Principles of due process provide that certain procedures, such as notice and the right to be heard, must be followed when property interests are at stake. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 2708–9, 33 L.Ed.2d 548 (1972). In order to determine what constitutes a property interest, the courts look to "existing rules or understandings that stem from an independent source such as state law." *Id.* In addition, one must possess more than an abstract need or desire for a benefit in order to treat it as a property interest. One must have "more than a unilateral *expectation* of it. He must, instead, have a legitimate claim of *entitlement* to it." *Id.* (emphasis added).

Therefore, the inquiry in this case centers on whether plaintiff's interest in the 69 unused accumulated sick leave days rises to the level of a constitutionally protected property interest as espoused in *Roth, supra.* In this case, it is true that the "inaction" of the board through the years seemed to indicate a policy of unlimited accumulation. However, this court must also refer to state law in order to more properly define the interest at hand.

Kentucky case law dating back as far as 1961 indicates that a governing body such as a board of education may speak only through its records or minutes. *Lewis v. Board of Education of Johnson County,* 348 S.W.2d 921, 923 (Ky.1961). *See also Commonwealth ex rel. Matthews v. Ford,* 444 S.W.2d 908, 909 (1969). In *Stafford v. Board of Education of Casey County,* 642 S.W.2d 596, 597–8 (Ky.Ct.App.1982), the court reiterated this rule and stated that "[t]he formal records constitute the only legal evidence of all that was done ... and *that nothing more was done."*

■ In this case, the formal records, or minutes, of the defendant board of education do not indicate any policy authorizing an accumulation of more than 20 days of unused sick leave for the years preceding 1970, or more than 60 days during the years of 1970 through 1974. Although the board's later actions in approving retirement pay based on excess days in the cases of Dorothy Sterrett and Mary Catherine Wilmeth were contrary to the legislation, such actions did not create a property interest in those days. Rather, at most, plaintiff possessed an *expectation* in those excess days, as opposed to an *entitlement* to them. Some type of board action, recorded in its minutes, is necessary in this instance to support a finding of a constitutionally-protected property interest.

Therefore, the actions of the defendants in reducing plaintiff's accumulated sick leave days by 69 days did not rise to a constitutional level so as to amount to the deprivation of her property without due process of law.

Having failed to establish any constitutional claims, this court finds that plaintiff's action should be dismissed. An ap-

propriate order shall accompany this memorandum opinion.