IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CLAUDE LACOMBE, | § | |
| | § | No. 542, 2016 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: |
| v. | § | Superior Court of the |
| | § | State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | |
| | § | Cr. I.D. No. 1201018188 (N) |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 3, 2017
Decided: May 17, 2017

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## **O R D E R**

This 17th day of May 2017, upon consideration of the briefs and record on appeal, it appears to the Court that:

(1)  Claude Lacombe ("Lacombe") appeals from the Superior Court's October 25, 2016 decision summarily dismissing his Amended Motion for Postconviction Relief (the "Motion").[1]  In his Motion, Lacombe raised three ineffective assistance of counsel claims.  He argued that his lawyers in the Superior Court ("Trial Counsel") failed to present mitigating evidence during sentencing and failed to demand specific performance of his plea agreement.  As to his plea agreement, Lacombe claims that the State breached its implied covenant of good faith and fair dealing at the sentencing hearing by tacitly arguing

---

[1] *State v. Lacombe* (*Lacombe II*), 2016 WL 6301233 (Del. Super. Oct. 25, 2016).

1

for a lengthier sentence than the twenty-two years which the State had agreed to recommend. He also contended that his lawyer on direct appeal ("Appellate Counsel") ineffectively argued that his life sentence was disproportionate.[2] In dismissing the Motion, the Superior Court held that Lacombe's claim that his Appellate Counsel was ineffective was procedurally barred, and that his other claims were without merit.[3] We have considered all three claims on the merits and AFFIRM the dismissal of Lacombe's Motion.

(2) On December 26, 2011, Lacombe, his brother, Paul, Elijah Pressley, and Christie Emmons participated in what they planned to be a robbery of two drug dealers. Lacombe and Emmons waited in Emmons' car while Paul and Pressley got into the victims' car. While in the car, Paul shot and killed both of the victims.[4]

(3) Lacombe agreed to plead guilty to Murder in the Second Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Attempted Robbery in the First Degree, and Conspiracy in the Second Degree, and the State agreed to recommend a sentence of twenty-two years at Level V incarceration, followed by decreasing levels of supervision. The total mandatory minimum sentence was 21 years. During Lacombe's guilty plea colloquy, Lacombe indicated that he understood that the Superior Court would not be bound by the State's recommendation and could lawfully impose a penalty of life imprisonment for second degree murder, plus additional time on the related charges.

---

[2] Appellate Counsel was also one of the lawyers that represented Lacombe in the Superior Court.

[3] *Lacombe II*, 2016 WL 6301233, at *2-3.

[4] *Lacombe v. State* (*Lacombe I*), 93 A.3d 654, 2014 WL 2522273, at *1 (Del. May 30, 2014) (TABLE).

2

(4)    The Superior Court sentenced Lacombe and Paul together. At sentencing, the State presented argument on the two brothers' relative culpability. Although Paul actually shot the two victims, the State highlighted his cooperation with the police, his acceptance of responsibility, and his mental illness as reasons to seek a life sentence rather than the death penalty. The State portrayed Lacombe as the "mastermind" behind the incident. According to the State, Lacombe remained out of sight during the robbery "because it was his intent to rob [the victims] again later, and he didn't want them to know who he was."[5]

(5)    The State recommended a sentence of 22 years for Lacombe as required by the plea agreement:

> So even after two people are dead, four people are arrested, the person most responsible is trying to take responsibility for what he did, we have the older brother, the mastermind, the puppet master, still trying to control the outcome of this.

> So don't be fooled when you consider what sentence to give Claude by the fact that he stayed in the car when this robbery and double homicide occurred. He didn't pull the trigger, but he may as well have, because he set the whole thing in play.

> Now, he has pled to a series of charges before this Court, and the State is recommending that he receive 22 years Level V time followed by a lengthy period of probation when he is released.[6]

(6)    Paul pled guilty, but mentally ill, to one count of first degree murder and was sentenced to life in prison. The Superior Court also sentenced Lacombe to life in prison for second degree murder plus ten unsuspended years of imprisonment on the three

---

[5] App. to Opening Br. at A52 (Tr. 29:14-17).

[6] *Id.* at A53 (Tr. 32:11-33:3).

3

remaining charges, despite the State's recommendation and the fact that Lacombe pled to a lesser degree of murder.[7] The court rejected the State's "mastermind" theory, but noted that Lacombe was "a significant factor in the planning and determination of the events that transpired"[8] and viewed his role "as being fairly equal in different respects to that of [his] brother . . . ."[9] This Court affirmed the judgment of sentence on direct appeal on May 30, 2014.[10]

(7)     In his Motion, Lacombe argued that Trial Counsel was ineffective at sentencing by failing to present mitigating evidence and failing to demand specific performance of his plea agreement. Lacombe also contended that Appellate Counsel was ineffective for failing to cite comparable cases illustrating the disproportionality of his sentence. In dismissing the Motion, the Superior Court held that Lacombe's Appellate Counsel claim was procedurally barred as previously litigated pursuant to Superior Court Criminal Rule 61(i)(4). The Superior Court further held that Trial Counsel's performance was objectively reasonable and that Lacombe failed to demonstrate prejudice from any alleged deficiency.

---

[7] *Id.* at A58 (Tr. 50:10-15). The life sentence was solely for the murder second charge, which alone had a mandatory minimum of 15 years. *See id.* at A21 (Truth-in-Sentencing Guilty Plea Form). Lacombe was also sentenced to five years at Level V for PFDCF, five years at Level V for attempted robbery in the first degree, and two years at Level V, suspended for two years at Level IV, for conspiracy in the second degree. *Id.* at A40-41 (Sentence Order).

[8] *Id.* at A57 (Tr. 46:22-47:1).

[9] *Id.* at A58 (Tr. 50:8-10).

[10] *Lacombe I*, 2014 WL 2522273, at *2.

4

(8)     This Court "review[s] the Superior Court's denial of a motion for post-conviction relief for abuse of discretion."[11] "Constitutional questions and other questions of law are reviewed *de novo*."[12]

(9)     "To demonstrate ineffective assistance of counsel, a defendant must satisfy two requirements" as set forth by the United States Supreme Court in *Strickland v. Washington*.[13] "*First*, the defendant must establish that his or her 'counsel's representation fell below an objective standard of reasonableness.'"[14] "Doing so requires overcoming a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'"[15] "*Second*, the defendant must demonstrate a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[16] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[17] A reasonable probability "requires more than a showing 'merely that the

---

[11] *Richardson v. State*, 3 A.3d 233, 237 (Del. 2010) (citing *Gattis v. State*, 955 A.2d 1276, 1280-81 (Del. 2008)).

[12] *Redden v. State*, 150 A.3d 768, 772 (Del. 2016) (quoting *Hoskins v. State*, 102 A.3d 724, 728 (Del. 2014)) (internal quotations omitted).

[13] *Id.* at 773.

[14] *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

[15] *Id.* (quoting *Strickland*, 466 U.S. at 689) (additional internal quotation marks omitted).

[16] *Id.* at 773-74 (quoting *Strickland*, 466 U.S. at 694).

[17] *Id.* at 774 (quoting *Strickland*, 466 U.S. at 694) (internal quotations omitted).

5

conduct could have or might have or it is possible that it would have led to a different result.'"[18]

(10)   Before reaching the merits of the Motion, this Court must determine whether the claims are procedurally barred, applying the version of Superior Court Criminal Rule 61 that was in effect at the time Lacombe filed his *pro se* motion.[19]  The only claim alleged to be procedurally barred is the one concerning Appellate Counsel's performance.  The Superior Court held that Lacombe's Appellate Counsel claim was procedurally barred as previously litigated under Rule 61(i)(4), reasoning that, "[a]lthough Defendant now challenges the intensity with which [A]ppellate [C]ounsel presented this issue, the challenge presented was identical to the one Defendant claims should have been raised."[20]  Alternatively, the Superior Court stated that Lacombe could not show prejudice, stating that the issue "was fully litigated on Defendant's direct appeal . . . ."[21]

(11)   Although we do not agree that Lacombe's Appellate Counsel argument was previously adjudicated, we reject Lacombe's contentions on appeal.  On direct appeal, Appellate Counsel argued that Lacombe's life sentence was grossly disproportionate in

---

[18] *Id*. (quoting *Neal v. State*, 80 A.3d 935, 942 (Del. 2013)).

[19] *Id.* at 772 (citing *Bradley v. State*, 135 A.3d 748, 757 n.24 (Del. 2016)).  Lacombe filed his first motion for postconviction relief on May 29, 2014.  App. to Opening Br. at A11, D.I. 68.  Although the mandate on his direct appeal did not issue until June 19, 2014, the Superior Court accepted the May 29, 2014 motion and appointed counsel.  *Lacombe II*, 2016 WL 6301233, at *5 n.15.  All citations to Rule 61(i)(4) in this memorandum refer to the 2013 version, which was in effect on May 29, 2014, the date Lacombe filed his first *pro se* motion for postconviction relief.

[20] *Lacombe II*, 2016 WL 6301233 at *5.

[21] *Id.*

violation of the Eighth Amendment to the United States Constitution. This argument

invoked the two-part test established by this Court in *Crosby v. State*,[22] which provides:

> [T]his Court must undertake a threshold comparison of the crime committed and the sentence imposed. If such a comparison leads to an inference of gross disproportionality, then this Court must compare [the defendant's] sentence with other similar cases to determine whether the trial court acted out of step with sentencing norms.[23]

In his Motion, Lacombe contended that Appellate Counsel failed to provide a meaningful

case comparison demonstrating the disproportionality of his sentence under *Crosby*.

Although assessing whether prejudice resulted from this alleged deficiency invokes the

*Crosby* analysis, the argument itself is not that the sentence is disproportionate. Rather,

the claim here is that Appellate Counsel was ineffective for citing only one case from

another jurisdiction. Lacombe has alleged a specific deficiency in Appellate Counsel's

performance that was not raised on direct appeal.[24] Accordingly, we view this argument

as not previously litigated and will address it on the merits under *Strickland*.

(12) We need not determine whether failing to provide comparable cases was

objectively reasonable, because no prejudice resulted.[25] The comparable case analysis

---

[22] 824 A.2d 894 (Del. 2003).

[23] *Crosby*, 824 A.2d at 908.

[24] This Court generally does not review claims of ineffective assistance of trial counsel on direct appeal. *See Duross v. State*, 494 A.2d 1265, 1267 (Del. 1985) ("The rationale for this rule arises from the reviewing Court's need to have before it a complete record on the question of counsel's alleged incompetency, as determined in an evidentiary hearing.").

[25] *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013), *as corrected* (Aug. 15, 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant." (citing *Strickland*, 466 U.S. at 697)).

7

relates to the second step of *Crosby*, which this Court on direct appeal expressly did not reach:

> The first part of the disproportionality test requires the Court to compare the crime Lacombe committed with the sentence imposed. Lacombe pled guilty to murder—the most heinous violent crime. Although Lacombe did not pull the trigger, he gave the gun to his mentally ill brother, who was attempting to commit armed robbery. Two people were killed in an incident that Lacombe planned and set in motion. There is nothing extreme, or grossly disproportionate, about sentencing a murderer to life in prison. *Because the sentence does not raise an inference of gross disproportionality, the Court does not undertake the second step of the* Crosby *analysis*, where the fact that Lacombe received the same sentence as his brother would be considered. [26]

Accordingly, Appellate Counsel's failure to provide a survey of comparable cases had no impact on the direct appeal, and Lacombe's Appellate Counsel claim fails the second prong of the *Strickland* test. We affirm the dismissal of Lacombe's Appellate Counsel claim on the Superior Court's alternative basis that Lacombe has not demonstrated prejudice given this Court's continuing view that there was nothing grossly disproportionate about sentencing Lacombe to life in prison for his role in the shooting deaths of two people.

(13)   Lacombe's two remaining ineffective assistance of counsel claims concern his Trial Counsel. He contended in his Motion that Trial Counsel was ineffective for failing to present mitigating evidence. On appeal, Lacombe focuses his mitigation argument on Trial Counsel's decision not to submit to the Superior Court a mitigation report that a retained expert prepared in advance of sentencing.[27] Lacombe contends that the lack of mitigation ensured a life sentence for him. The State argues that Trial Counsel made a

---

[26] *Lacombe I*, 2014 WL 2522273, at *2 (emphasis added).

[27] *See* App. to Opening Br. at A126-54 (Social History of Claude Pierre Lacombe).

strategic decision not to use the mitigation report and that submitting the report would not have resulted in a more favorable sentence.

(14) The record demonstrates that Trial Counsel decided to withhold the report out of concern that it might have been harmful at sentencing:

> The main concern I had about submitting [the] full report was that the State would use its submission to put before the Court allegations that the Defendant had a history of sexually abusing his brother Paul. I was concerned that submitting the full report would open the door to this potentially detrimental allegation. . . . If this allegation was presented to the Court, its effect upon sentencing probably would have been detrimental to the Defendant.[28]

Trial Counsel focused instead on Lacombe's youth, troubled childhood, and limited criminal history, supported by the presentence investigation report and a timeline illustrating instability in Lacombe's childhood.

(15) Applying *Strickland*, the Superior Court found that Trial Counsel's decision not to submit the report was objectively reasonable, noting that "there was information contained within the report which could have strengthened the idea that Defendant was manipulative of his younger brother Paul, placing more culpability on Defendant."[29] Emphasizing this aspect of Lacombe's relationship with his brother "would have further bolstered the [c]ourt's view" of Lacombe's role in the murders as "being fairly equal in different respects to that of" his brother, the shooter.[30] As to prejudice, the Superior Court

---

[28] *Id.* at A284 (Affidavit of Trial Counsel).

[29] *Lacombe II*, 2016 WL 6301233 at *6.

[30] *Id.*

9

found none, observing that "no degree of mitigating evidence, as represented by Defendant's current counsel, would have changed the outcome of Defendant's sentence."[31]

(16) We agree with the Superior Court that Trial Counsel's decision not to submit the report for consideration at sentencing was objectively reasonable. Trial Counsel engaged in a thorough investigation of potential mitigating evidence and made a strategic decision not to use it because it might open the door to harmful evidence. Lacombe has not overcome the strong presumption that this decision was a sound strategy designed to maximize Lacombe's opportunity to secure a favorable sentence. In addition, the Superior Court's comments after reviewing the mitigation report in this matter suggest that omitting the report did not result in prejudice because it would not have impacted Lacombe's sentence.[32] Thus, the Superior Court's dismissal of Lacombe's claim concerning the mitigation report was not an abuse of discretion.

(17) Lacombe next argues that Trial Counsel was ineffective for failing to demand specific performance of his plea agreement. Lacombe acknowledges that the State recommended 22 years as required by the plea agreement, but argues that the State's presentation at sentencing constituted a "tacit argument" for a harsher sentence. The Superior Court held that Trial Counsel could not have requested specific performance because the State did not breach the plea agreement. Additionally, the court determined

---

[31] *Id*. at *7.

[32] The Superior Court judge that dismissed Lacombe's Motion also sentenced him.

that Lacombe was not prejudiced by any possible deficiency of Trial Counsel, because the court, at its discretion, deviated from the State's recommendation.

(18) In two recent direct appeals, this Court addressed the State's obligations at sentencing under a plain error standard of review. In *Jones v. State*,[33] the State had recommended a minimum mandatory sentence of eight years pursuant to a plea agreement. However, after reading a victim impact statement and highlighting aggravating factors, the prosecutor commented, "Who knows if [eight years] will be enough for [the defendant] to do anything different but maybe it would be a start."[34] This Court noted that, "even where a plea agreement exists, the State is entitled to support its plea agreement with the presentence investigation and other factors relevant to the reasonableness of the sentence recommendation."[35] This Court acknowledged that "some of the State's comments at sentencing were speculative and more restraint might have been shown," but did not find plain error because those comments "failed to rise to the level of subverting the integrity of the plea bargaining process."[36] This Court also observed that the sentencing court "always had discretion" to impose a higher sentence, which the defendant acknowledged before entering the plea.

---

[33] 146 A.3d 64, 2016 WL 3568181 (Del. June 22, 2016) (TABLE).

[34] *Id.* at *1 (alteration in original).

[35] *Id.* at *2.

[36] *Id.*

11

(19) Similarly, in *Lawhorn v. State*,[37] the State recommended a minimum mandatory sentence of 25 years, but also noted the defendant's prior criminal history and informed the court that the mother of a prior victim "wanted the Superior Court to be aware that the victim was in therapy and would be affected her entire life."[38] This Court found no plain error, noting that the Superior Court was aware of the facts highlighted by the State, and that the State did not make inflammatory remarks on those facts.[39] However, this Court cautioned against overly aggressive argument at sentencing:

> [W]e note that when the State has reached a plea agreement and the defendant is not seeking a sentence less than the State's recommendation, the State should be cautious in commenting on aggravating factors, because if, when objectively read, those remarks seem to be only useful in suggesting a sentence higher than the State agreed to, they can support reversal based on the State's failure to adhere in good faith to its bargain.[40]

(20) Lacombe contends that the State's comments here are the sort of remarks this Court cautioned against in *Lawhorn*. We do not believe that the Superior Court abused its discretion in denying relief as to this claim. The Superior Court correctly observed that

---

[37] 151 A.3d 449, 2016 WL 6649222 (Del. Nov. 9, 2016) (TABLE).

[38] *Id.* at *1.

[39] *Id.* at *3.

[40] *Id.* "[I]n Delaware, a covenant of good faith and fair dealing applies to plea bargains as well as to any agreement between a criminal defendant and the State." *Cole v. State*, 922 A.2d 354, 359 (Del. 2005). Pursuant to that covenant, the parties must "refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain," and "parties are liable for breaching the covenant when their conduct frustrates the overarching purpose of the contract by taking advantage of their position to control implementation of the agreement's terms." *Id.* (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)) (internal quotation marks omitted). This Court has observed that "the State will almost always be in a position to take advantage of its superior ability to control implementation of the agreement's terms." *Id.* at 359-60.

12

plea agreements are governed by contract principles, including an implied covenant of good faith and fair dealing. This principle "applies 'when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected.'"[41] To put it simply, a deal is a deal: if the State makes a plea deal with a defendant, it should stick to it and not engage in conduct that is designed to undermine it. Here, the State should have exercised more restraint, but did not cross the line that would trigger reversal.[42]

(21) Additionally, any deficiency of counsel did not result in prejudice under *Strickland* because the sentencing court was not bound by the State's recommendation.[43] The court made this fact clear to Lacombe during his plea colloquy. Accordingly, the Superior Court did not abuse its discretion in dismissing Lacombe's claim that Trial Counsel was ineffective for failing to demand specific performance of the plea agreement.

---

[41] *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010)).

[42] We have observed that the State's superior ability to control implementation of plea agreements highlights the special role of prosecutors in criminal cases. Prosecutors represent the sovereign whose obligation is to govern impartially and to ensure that justice be done. *Cole*, 922 A.2d at 360 (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)).

[43] Pursuant to Superior Court Criminal Rule 11, the State, in exchange for the defendant's guilty plea, may agree that it will "[m]ake a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request *shall not be binding on the court*." Super. Ct. Crim. R. 11(e)(1)(B) (emphasis added).

13

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court in its decision of October 25, 2016 is AFFIRMED.

BY THE COURT:

/s/ *Karen L. Valihura*
Justice